UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                                                                                           17 Cr. 434 (ARR)

            -against-

ABEL ROMERO-MELENDEZ,

                                                              Defendant.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ABEL ROMERO-MELENDEZ'S PRETRIAL MOTIONS**

                                                      MICHAEL HUESTON, ESQ.
                                                      *Attorney for Defendant* Abel Romero-Melendez
                                                      16 Court Street, Suite 1800
                                                      Brooklyn, New York 11241
                                                      (718) 246-2900

Dated:  November 3, 2019

**PRELIMINARY STATEMENT**

This memorandum of law is submitted in support of the pretrial motions filed on behalf of defendant Abel Romero-Melendez. Mr. Romero-Melendez seeks: (1) an order directing the government to immediately disclose all *Brady/Giglio* information including all witness statements pursuant to 18 U.S.C. § 3500; (2) an order severing defendant's trial from that of his codefendants pursuant to Fed. R. Crim. P. 14; (3) an order directing the government to provide notice of all evidence it intends to offer at trial against defendant pursuant to Fed. R. Evid. 404(b); (4) leave to join in his codefendants' pretrial motions to the extent they are beneficial to his defense; and (5) such other and further relief as the Court may deem just and proper.

For the reasons set forth below, Mr. Romero-Melendez is entitled to the relief he seeks.

**ARGUMENT**

**I.      Mr. Romero-Melendez Moves For An Order Directing The Government To Immediately Disclose All *Brady/Giglio* Information Including All Witness Statements Pursuant to 18 U.S.C. § 3500**

Mr. Romero-Melendez has been indicted in this matter for an Alien Smuggling Conspiracy from 2006 and June 2017 (Count 1); a Conspiracy to Transport Minors from August 2006 and April 2014 (Count 2); a Sex Trafficking Conspiracy from January 2009 and July 2017 (Count 3); Sex Trafficking of a Minor from August 2006 and March 2007 – Jane Doe # 1 (Count 4); and Illegal Reentry from 2013 and July 2017 (Count 18).

This application concerns Mr. Romero-Melendez's alleged involvement in Counts One through Four. Upon information and belief, two women (who are known to the government) gave exculpatory statements to law enforcement about Mr. Romero-Melendez, stating that they were not forced into sex trafficking by him.

Given this, on August 28, 2019, Mr. Romero-Melendez requested these statements, *see* ECF Document # 100, as "material" pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The defense and the government also conferred about this matter.

*Brady/Giglio* material is immediately discoverable under both Fed. R. Crim. P. 16(a)(1)(C) and *Brady v. Maryland*, 373 U.S. at 83. In *Strickler v. Greene*, 527 U.S. 263 (1999), the Court emphasized that Brady material includes impeachment evidence as well as exculpatory evidence. A *Brady* claim has three elements: "The evidence at issue must be favorable to the accused, … that evidence must have been suppressed by the State, … and prejudice must have ensued." *Strickler*, 527 U.S. at 281. Material that is "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of the government's witnesses. *See United States v. Bagley*, 473 U.S. 667, 676-77 (1985). Exculpatory evidence also includes information that tends to mitigate punishment as well as guilt. *Brady*, 373 U.S. at 89. Nor is the exculpatory value of information negated by the fact that the government has other evidence that contradicts the exculpatory information. *See United States v. Rittweger*, 524 F.#d 171, 181 (2d Cir. 2008).

Courts apply "a strict standard of materiality" where "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103-104 (1976). Where the undisclosed evidence does not show the falsity of evidence offered by the government, the test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682

2

(1985).  This standard is met when the suppression of evidence "undermines confidence in the outcome of the trial." *Id.*  It does not require that the defense show by a preponderance of the evidence that the undisclosed evidence would probably have led to an acquittal.  *Whitley v. Kyles*, 514 U.S. 419 434 (1995).  *But see Strickler,* 527 U.S. 291 (reasonable probability means more than reasonable possibility).

Further, evidence may be material for Brady purposes even though it is not admissible, so long as it could lead to admissible evidence.  *See United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012).  Undisclosed impeachment evidence concerning a government witness has been viewed as material "where the witness in question supplied the only evidence linking the defendant to the crime." *United States v. Avellino*, 136 F.3d 249, 256 (2d. Cir. 1998).

The touchstone for determining the proper timing for the disclosure of Brady material is whether the defense has an opportunity to make effective use of the information at trial.  *United States v. Coppa (In re United States),* 267 F.3d 132, 144 (2d Cir. 2001).  The Second Circuit has found that the failure to make pretrial disclosure of exculpatory information violates the Brady doctrine when it deprives the defense of a reasonable opportunity to investigate the information or otherwise use it effectively.  *Grant v. Alldredge*, 498 F.2d 376, 382 & n.7 (2d Cir. 1974).

The items requested, the statements of two women who gave exculpatory information about Mr. Romero-Melendez, are obviously "material" because they contradict the government's theory.   This material also has value as extrinsic impeachment evidence, pursuant to Fed. R. Evid. 608(b), regarding any witnesses who may testify about Mr. Romero-Melendez's alleged trafficking of these two women.  This

3

evidence could surely affect the trial's outcome. Accordingly, it should be produced.

## II. Mr. Romero-Melendez Moves To Sever His Trial Based On Spillover Prejudice

Mr. Romero-Melendez moves for an order pursuant to Fed. R. Crim. P. 14 to sever his trial from that of his codefendants.

Rule 14(a) of the Federal Rules of Criminal Procedure provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

*See* Fed. R. Crim. P. 14(a). Severance may be granted where it can be shown that a joint trial would prevent a reliable verdict. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Rule 14(a) permits the Court to "order separate trials of counts, [or] sever the defendants' trials" if it appears that a defendant or the government is prejudiced by the joinder of defendants or counts. A defendant must show that the prejudice from a joint trial "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 1010 (2d Cir. 1998). "'Prejudice' occurs in joint trials when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom admission is proper." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. DiNome*, 954 F.2d 839, 845 (2d Cir. 1992) (severance required as to two defendants after RICO charges dismissed as to them and evidence admitted against their codefendants created spillover prejudice). Severance may be required where "spillover might influence a jury to attribute criminal intent to ambiguous conduct associating a

4

particular defendant with a conspiracy." *United States v. Cervone*, 907 F.2d 332, 342 (2d Cir. 1990).

The vast majority of discovery concerning the alleged abuse and injuries suffered by the alleged victims in this case was not committed by Mr. Romero-Melendez. In the government's extradition affidavits, victims have described being beaten, threatened, intimidated, forced to have an abortion, and being raped by some of Mr. Romero-Melendez's codefendants. While these same extradition documents only mention Mr. Romero-Melendez not allowing a victim to leave an apartment in Queens unaccompanied.

The case of *United States v. Gallo*, 668 F. Supp. 736 (E.D.N.Y. 1987), provides an example of the factors the Court should consider in making its determination regarding severance which includes "the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *Id.* at 749.

Using the factors set forth in *Gallo* it is easy to see how Mr. Romero-Melendez will be adversely affected by spillover prejudice. *See e.g. United States v. Kelly*, 349 F.2d 720, 759 (2d Cir. 1965) (there was prejudice to a minor codefendant from inexorable accumulation of evidence against leaders in the organization). If tried alone, it is a fair estimate that the case-in-chief against Mr. Romero-Melendez would take little

5

time, perhaps a few days. However, if tried with his codefendants the trial could go on for possibly weeks. Like the codefendant in *Kelly*, Mr. Romero-Melendez will be negatively impacted by any perceived trial drag. *Id.* at 759. Moreover, "the principal and inevitable prejudice" to Mr. Romero-Melendez will be "the slow but inexorable accumulation of evidence" against his codefendants that will rub off on him, and will reach its peak when the government seeks to offer into evidence proof of his relationship with his codefendants and any incidental contact between them. *Id.*

Severance is also warranted because statements and admissions made by Mr. Romero-Melendez's alleged coconspirators could not be introduced at trial against him without showing he joined the drug conspiracy. *See e.g., United States v. Russo*, 302 F. 3d. 37, 46 (2d Cir. 2002) (For a co-conspirator statement to be admissible, the defendant must be "jointly engaged with the declarant in a conspiracy seeking" the objective sought to be advanced by the speaker.) The *Russo* Court, in discussing *United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999), noted the essential holding that offering statements under the coconspirator exception "was unacceptable when the speaker and the defendant were not jointly engaged in the criminal venture that was being advanced by the speaker." *Russo*, 302 F. 3d. at 44 ("An association between the defendant and the declarant in some other venture – and in particular a general association between them in the Mafia – will not suffice.").

Finally, severance is required because almost all of the anticipated evidence is not admissible against Mr. Romero-Melendez under Fed. R. Evid. 404(b) to show his knowledge, intent, opportunity, or modus operandi, and, even assuming its admissibility,

6

its probative value would be substantially outweighed by its prejudicial effect using the balancing test imposed by Fed. R. Evid. 403.

Accordingly, as in *Gallo*, this Court must be on guard against giving undue weight to judicial economy and consider:

> The prejudice concomitant with [a] case's complexity is "particularly injurious" to defendants charged in a small proportion of the counts and who are implicated by only bits and pieces of the evidence. *United States v. Branker*, 395 F.2d 881, 882 (2d Cir. 1968). "The jury is subjected to weeks [or months] of trial dealing with dozens of incidents of criminal misconduct which do not involve those [minor] defendants in any way." *Id.* "Inevitable prejudice" to the peripheral defendants is caused by "the slow but inexorable accumulation of evidence" against the major players. *United States v. Kelly*, 349 F.2d [at 720]. The sheer volume of such evidence against coconspirators, especially when the prejudiced defendants sit in court for weeks or months on end without their names so much as being mentioned, *id.*, can so unbalance the scales that "no amount of cautionary instructions could . . . undo [] the harm. . . ." *Id.* at 758. Where the evidence against the "minor" defendants is "'so little or so vastly disproportionate' in comparison to that admitted against the remainder of the defendants," *United States v. Capra*, 501 F.2d 267, 281 (2d Cir. 1974) (quoting *United States v. Rizzo*, 491 F.2d 215, 218 (2d Cir. 1974)), *cert. denied*, 416 U.S. 990, 945 S. Ct. 2399, 40 L. Ed. 2d 769 (1975), the likelihood of spillover prejudice is greatly enhanced. *See United States v. Gilbert*, 504 F. Supp. 565 (S.D.N.Y. 1980) (severing one of three defendants where "disproportionate involvement" in overall scheme raised substantial risk of prejudice by accumulation of evidence against codefendant). The courts must be scrupulous to avoid the spectre of guilt by association - or, more likely, guilt by confusion.

*Id.* at 750. In this balancing, fairness to Mr. Romero-Melendez – the person – should win out over economy to a system, and his application should be granted. *See e.g., United States v. Madrid*, 302 F. Supp. 2d 187, 190 (S.D.N.Y. 2003) (the district court exercised its discretion to sever the counts under Rule 14 to avoid undue prejudice because "the

7

laundering trial will involve evidence connecting defendant to a corrupt politician and a powerful, violent narcotics cartel, [which] … may well arouse jury animus that could, in a joint trial, spill over into the jury's consideration of the fraud charges, which involve an alleged scheme which, fortunately, turned out not to have injured anyone. *Id.* at 191.

### III. Advance Notice of 404(b) Evidence

Fed. R. Evid. 404(b) provides that, upon request of a defendant in a criminal case, the government "shall provide reasonable notice in advance of trial" of any evidence of other crimes, wrongs or acts it intends to introduce at trial. Mr. Romero-Melendez requested by letter, dated August 21, 2017, advance notice of any evidence the government will seek to introduce at trial pursuant to Fed. R. Evid. 404(b) against him. *See* ECF Document # 24. Under Rule 404(b), notice is mandatory, and the Court should therefore direct immediate compliance so the parties can resolve admissibility to the greatest extent possible before the jury is exposed to *voire dire* examination and opening statements. 2 *Weinstein's Evidence* 494 (1) at 404-13 (1980); *also see United States v. Kelly*, 420 F.2d 26, 29 (2d Cir. 1969) ("[T]rial by ambush in violation of spirit of rules…"). Typically, the government consents to this relief. *See e.g.*, *United States v. Gambino*, 818 F. Supp. 541, 552-3 (E.D.N.Y. 1993).

8

### IV. Mr. Romero-Melendez Joins The Pretrial Motions Of His Codefendants

Pursuant to Federal Rule of Criminal Procedure 12, Mr. Romero-Melendez joins the motions of his codefendants and any arguments that apply to his pretrial motions.

## CONCLUSION

Mr. Romero-Melendez's motions should be granted.

Dated:	Brooklyn, New York
	November 3, 2019

	Respectfully submitted,

	___s/_____
	MICHAEL HUESTON, ESQ.
	*Attorney for Defendant Abel Romero-Melendez*
	16 Court Street, Suite 1800
	Brooklyn, New York 11241
	(718) 246-2900