# EXHIBIT D

**SOUTHWOOD REALTY COMPANY**
**RESIDENTIAL LEASE AGREEMENT**

Print Form
Revised: 12/14

This Residential Lease Agreement (hereinafter referred to as "Lease") is made and entered into this **04** day of **MAY**, **2017** by and between the Lessor and Lessee(s) identified below.

### 1(A) IDENTIFICATION OF PARTIES

Name of Lessor (Owner): Southwood Realty Co. dba Misty Woods   Address of Lessor: [redacted] Charlotte, NC [redacted]

All amounts paid by Resident to Lessor shall be made payable to (if different than Lessor): Misty Woods

**Full Legal Name(s) of Lessee(s):**
1: ABEL ROMERO MELENDEZ
2: LIZBETH CASTELLANOS BAUTISTA
3:
4:

If this Residential Lease Agreement is executed by more than one Lessee, **each** Lessee shall be *jointly and severally* liable (i.e. each individual Lessee will be fully responsible) for adhering to all of the terms and conditions herein contained.

**AUTHORIZED OCCUPANTS**
(Check box for those with key access)

| Key Access | Name | Age |
|---|---|---|
| ☐ Key Access | N/A | |
| ☐ Key Access | N/A | |
| ☐ Key Access | N/A | |
| ☐ Key Access | N/A | |

Throughout this Lease, "Resident" refers to all Lessee(s) listed above. Resident acknowledges that he/she/they shall be fully responsible for the actions of all Authorized Occupants. Furthermore, Resident understands and acknowledges that Resident shall be in default of this Lease (*see Paragraph 20 below*) in the event any Authorized Occupant breaches any of the conditions and terms of this Lease.

### 1(B) ADDRESS AND TERM

Leased Property Address (street, unit, city, state, zip code):
[redacted] CHARLOTTE NC [redacted]

Lessor agrees to lease to Resident the property described above, hereinafter referred to as "Premises", in consideration of the agreements and promises contained in this Lease.

Lease Term Beginning Date: 06/13/2017    Lease Term Ending Date: 07/16/2018

### 1(C) RENT

**BASE MONTHLY RENT:** $925.00

Additional Monthly Rents (Describe form of rents below, if any):
Description: TRASH (DMP)   Amt: $7.00
Description: N/A   Amt: $0.00

Monthly Pet Fee (if applicable):
Amount per Pet: $20.00   X   Number of Pets: 0   =   **Total Monthly Pet Fee:** $0.00

**Monthly Rent Subtotal:** $932.00

**Monthly Concession/Discount?**
○ Yes   Description:   Amt: $0.00
● No    Description:   Amt: $0.00

One Time Concession Amount: NONE

**TOTAL MONTHLY RENT:** $932.00
(Equal to Base Monthly Rent Plus Additional Monthly Rents (incl. Pet Fee) Minus Discounts, if any)

Late Fees Per Month: $46.25
(Equal to 5% of the Total Monthly Rent, if rent paid after 5th of month; if rent is subsidized by a government entity, Late Fees will be $15.00 or 5% of the Resident's share of the monthly rent, whichever is higher).

**Is this a renewal?**   ● Yes   ○ No    Prorated Rent for First Month of Lease Term:

Page 1 of 11

State of North Carolina Lease   Resident Initials: ARM  Date: 05/04/17   Lessor Initials: EM  Date: 05/04/17
L.C.B.

**GOVERNMENT EXHIBIT**
**200**
*17-CR-434 (S-2) (ARR)*

### 1(D) DEPOSITS

| | |
|---|---|
| SECURITY DEPOSIT: | $200.00 |
| ADDITIONAL REFUNDABLE DEPOSIT: | $0.00 |
| TOTAL OF ALL SECURITY DEPOSITS: | $200.00 |

Name and address of Financial Institution where deposits are held: BB&T - 265 W Franklin Blvd., Gastonia, NC 28052-4144

### 1(E) MISCELLANEOUS FEES/CHARGES

NON-REFUNDABLE PET FEE: $0.00

*in addition to monthly pet fee set forth Paragraph 1(C) above*

ANNUAL RATE OF INTEREST, if any (see Paragraph 29): 8%

### 1(F) UTILITIES

UTILITIES & SERVICES TO BE PAID BY LESSOR (only if checked by Lessor):

- [ ] ELECTRICITY
- [ ] GAS
- [x] WATER
- [x] SEWER
- [ ] GARBAGE
- [ ] CABLE TV
- [ ] TELEPHONE
- [ ] INTERNET

**Resident understands and agrees that all utilities NOT checked above will be paid by Resident.** If not provided by Lessor, Resident agrees to obtain electric, water, sewer, and garbage service for the Premises. Failure to timely pay any utilities (except for sub-metered water and sewer services) shall be considered a material breach of this Lease for which Lessor may immediately declare Resident to be in default. Unless supplied by Lessor and Lessor acts with gross negligence regarding same, Lessor is not liable for failure to supply electric, water or sewer, nor for any damage resulting from an interruption or malfunction in service or any utility due to any cause. Failure of resident to maintain power, gas or water service is grounds for eviction.

**WATER AND/OR SEWER SUB-METERING:**

Are water/sewer services sub-metered?  [ ] YES   [x] NO

If water/sewer services are sub-metered, Resident will be charged for water and/or sewer service based on Resident's metered consumption of water. Resident will receive and shall pay monthly bills for Resident's usage of water and/or sewage services at the Premises from a water and/or sewer services provider. *See Paragraph 28 of this Lease for additional information.*

**Name and address of water or sewer services provider ("Provider"):**

### 1(G) RENTER'S INSURANCE

For the tenancy governed by this Lease, Resident:

- ( ) Does
- (•) Does Not

have a renter's insurance policy in effect. Resident acknowledges that Lessor is not responsible for any damages to the personal property of Resident. (See Paragraph 19(A) for details.)

### 2. LEASE TERM, RENT AND CONCESSIONS

A. <u>Term of Lease</u>: The term of this Lease shall begin and end on the dates set forth in Paragraph 1(B). The term of this Lease will be automatically renewed on a month-to-month basis <u>unless either</u>:
(1) either party provides the other party with a written notice of termination at least <u>thirty (30) days</u> prior to the end of the initial rental term or at least <u>thirty (30) days</u> prior to the end of any month-to-month term,
OR
(2) Lessor provides Resident with a written notice at least <u>thirty (30) days</u> prior to the end of the initial term that any renewal shall be at a different stated monthly rent ("new monthly rent") AND Resident, within <u>ten (10) days</u> after receipt of such notice, provides Lessor with a written notice of termination effective at the end of the term. However, should Resident fail to provide Lessor with such notice, the term of this Lease will be automatically renewed on a month-to-month basis at the new monthly rent.

**Any notice of termination shall be effective on the last day of the initial rental term or on the last day of the next successive renewal term after the required notice period if the initial term has expired.**

If the term of this Lease is renewed on a month-to-month basis. such renewal shall be subject to the same terms and conditions of this Lease with the <u>sole exception</u> being that Resident shall pay the new monthly rent if Lessor follows option (2) above and Resident does not subsequently provide the notice of termination within ten (10) days of Lessor's notice.

Page 2 of 11

State of North Carolina Lease    Resident Initials: _AR/V_ Date: _05/04/17_  Lessor Initials: _EW_ Date: _05/04/17_

L.C.B

B. Rent: Resident agrees to pay the prorated amount of rent calculated and listed in Paragraph 1(C) for the first partial month of the lease term. After that, Resident agrees to pay the Total Monthly Rent listed in Paragraph 1(C), said amount being the sum of the base rent plus any additional rents (including the monthly pet fee) minus any concessions and discounts. The Total Monthly Rent is due and payable to Lessor under the name stated in Paragraph 1 (A) and must be received at Lessor's address **on or before the first calendar day of each month.**

C. Concession: If Resident is receiving a monthly concession of rent, it will be indicated as such and described in Paragraph 1(C) of this Lease. However, in consideration for Lessor entering into this Lease with Resident and in consideration of Lessor's reasonable expectation that Resident will honor the full terms of this Lease and pay the Total Monthly Rent when due, Resident acknowledges that a concession in the above-stated amount has been granted to Resident in the form of a reduction in the rental amount due during the lease term. Notwithstanding the foregoing, **Resident understands and agrees that the concession is a privilege which Lessor may revoke in the event that Resident either: (1) fails to pay the Total Monthly Rent on or before the fifth (5th) calendar day of the month on two or more occasions during the term of this Agreement, or (2) becomes more than sixty (60) days past due in the payment of any bill for Resident's use of a sub-metered water or sewer services.** In the event Lessor revokes the concession, Lessor shall provide Resident with not less than fifteen (15) days written notice of its intention to revoke the monthly concession. The revocation shall take effect either on: (a) the first calendar day of the month following the most recent month for which Resident was late in tendering the Total Monthly Rent, or (b) the first day of the calendar month following the fifteen (15) day written notice where the revocation is based on Resident's failure to pay a sub-metered water or sewer bill. In the event Lessor revokes the concession, Resident's Total Monthly Rent for the remainder of the lease term shall increase by the value of the concession described in Paragraph 1(C).

### 3. LATE PAYMENTS

In the event Lessor elects to accept a rental payment after the 5th day of the month, a late fee in the amount stated in Paragraph 1(C) of this Lease shall apply. Said late fee shall not exceed $15.00 or five (5%) percent of the Total Monthly Rent, whichever is greater. If Resident's Total Monthly Rent is subsidized by the United State Department of Housing and Urban Development, by the United States Department of Agriculture, by a State agency, by a public housing authority, or by a local government, said amount shall not exceed $15.00 or an amount equal to five percent (5%) of the Resident's share of the Total Monthly Rent (after deducting the value of the rent subsidy received), whichever is greater. This late payment fee shall be due without demand and must be added to Resident's Total Monthly Rent and tendered, with the regular rent payment, to the Lessor by Cashier's Check or Money Order. It is Resident's obligation to ensure that the Total Monthly Rent is received by Lessor on time and is paid. Resident agrees that in the event that Resident's payment is lost or stolen by the criminal acts of third parties beyond Lessor's control, then Resident will replace said payment or Resident will be in default under the terms of this Lease.

### 4. RETURNED CHECKS

Resident agrees to pay a $25.00 processing fee (pursuant to N. C. G. S. § 25-3-506) for each check submitted by Resident that is returned by a financial institution for any reason, including insufficient funds, stop payment order and closed account. This returned check fee shall be due without demand and must, therefore, be tendered to Lessor together with the rent and any late fees due, by Cashier's Check or Money Order. Furthermore, if Resident's check is returned for any reason, Lessor shall have the right to re-deposit the returned check at a later date for collection (up to two additional attempts at collection) and Resident acknowledges that Resident's financial institution may charge Resident a fee as a result. If a check submitted by Resident is returned, Lessor reserves the right to require that all future payments by Resident be tendered by Cashier's Check or Money Order and Lessor also reserves the right to seek enforcement of the returned check pursuant to N. C. G. S. § 6-21.3.

### 5. SECURITY DEPOSIT

Resident agrees to tender to Lessor the Total of All Security Deposits (the "Security Deposit") as described in Paragraph 1(D) of this Lease prior to taking possession of the Premises. This sum shall be held in trust as a Security Deposit at the financial institution listed in Paragraph 1(D) for the period that Resident occupies the Premises. After Resident has vacated the Premises, Lessor will determine whether Resident is eligible for a refund of any or all of the Security Deposit. The amount of the refund will be determined in accordance with N. C. G. S. § 42-51 and the following conditions and procedures:

A. Resident understands that the Security Deposit is security for performance by Resident of the terms and conditions of this Lease, and may not be applied toward rent or other charges due while Resident remains in possession of the Premises;
B. If the Premises is rented by more than one Resident, all Residents acknowledge and agree that they are responsible for dividing any refund among themselves and that Lessor may pay the refund to any Lessee named in paragraph 1(A) of this Lease and the other Lessee(s) agree to hold Lessor harmless for such action;
C. Upon a sale or conveyance of the Premises, Lessor may transfer or assign the Security Deposit to the new owner. Upon the transfer, the new owner shall assume liability for the Security Deposit and Lessor's liability for the same shall terminate;
D. IF THE SECURITY DEPOSIT IS DEPOSITED IN AN INTEREST BEARING ACCOUNT, RESIDENT AGREES THAT ANY INTEREST THAT ACCRUES SHALL BE FOR THE SOLE BENEFIT OF LESSOR AND MAY BE WITHDRAWN BY LESSOR AT ANY TIME;
E. Lessor will refund Lessee(s) the amount of the Security Deposit LESS any amount needed to pay the cost of:
   (1) unpaid rent;
   (2) damage to the Premises in excess of normal wear and tear;
   (3) charges for late payments of returned checks;
   (4) cleaning the Premises if not properly done by Resident;
   (5) any unpaid bills that become a lien on the Premises;
   (6) re-renting the Premises after a breach by Resident;
   (7) any damages and/or court costs incurred by Lessor as a result of a breach of this Lease by Resident;
   (8) any unpaid charges for water and sewer services.
F. Within thirty (30) days after termination of the tenancy and delivery of possession by Resident, Lessor shall return the balance of the Security Deposit with an itemization of any deductions to Resident's last known address or such other address as Resident may specify in writing to Lessor before the end of the Lease Term. Resident shall notify the United State Postal Service to forward Resident's mail to Resident's new address. Lessor shall not be responsible for lost or damaged packages, envelopes or any other type of mail delivery. If Resident's address is unknown, Lessor will hold the balance of the Security Deposit for Resident's collection for a period of six (6) months, after which any remaining balance shall escheat to the State of North Carolina. At such time, Lessor's liability for the return of the Security Deposit shall cease.
G. Resident should be aware that the non-refundable pet fee which is set forth in Paragraph 1(E) above is paid by Resident to Lessor as consideration for the privilege of maintaining a pet at the Premises and not as payment for future damages relating to said pet and, therefore, is not a Security Deposit.
H. In the event a Resident ("the terminating Resident") seeks to terminate the Lease and avoid further liability under the Lease as provided by N.C.G.S.§ 42-45.1 but the Lease thereafter continues in full force and effect as to any remaining Resident(s), all parties to this Lease agree that entitlement to any and all security deposits tendered under this Lease shall automatically transfer to the remaining, non-terminating Residents.

Page 3 of 11

State of North Carolina Lease    Resident Initials: A.M. / L.C.B   Date: 05/04/17   Lessor Initials: ___   Date: 05/04/17

*Gov. Ex. 200-003*

### 6. PETS

A. No animals, birds, or pets of any kind shall be permitted in the Premises at any time without the express, written consent of Lessor, which shall be documented in a separate Pet Agreement. Lessor reserves the right to exercise sole discretion with regard to approval of pets. Resident further understands and agrees that in the event Lessor permits a pet in the Premises, the pet must be removed from the Premises if, in Lessor's sole discretion, it is determined that the pet constitutes a nuisance, creates a disturbance or poses a threat to property or the safety of any person. Should unauthorized pets be discovered on the Premises, Resident shall be responsible for the immediate payment to Lessor of any and all monthly pet fees as set forth in Paragraph 1(C) and non-refundable pet fee as set forth in Paragraph (1)E due to Lessor pursuant to the terms of this Lease. For the purposes of assessing the amount of said fees, Resident agrees that such amounts shall be calculated as though the unauthorized pets were present on the Premises on the first day of Resident's Lease Term.

B. Resident acknowledges that the presence of pet urine in the carpet or flooring of the Premises **shall not, under any circumstances, be considered normal wear and tear**. Resident further acknowledges that he/she/they shall be fully responsible for the value of replacement and installation of carpet, flooring, and/or fixtures necessitated by the presence of animal urine or other waste in the Premises. Resident understands and agrees that the Security Deposit referenced in Paragraph 1(D) may be applied to any such damages and that Resident shall remain fully liable to Lessor for any deficiency. The replacement value of carpet, flooring, and fixtures shall be prorated based on the respective age of the item(s) at the time of replacement as compared to the original expected life of the respective item(s).

### 7. KEYS AND LOCKS

A. Resident shall not install additional or different locks or gates on any doors or windows in the Premises, except as agreed to and approved of by Lessor in writing or as otherwise provided in Paragraphs 7(B), 7(C), and 7(D). Upon the termination of this Lease, Resident shall return all keys, security access cards and devices, parking gate openers, and garage door openers (as applicable to the Premises) to Lessor. If keys are not returned to Lessor at the end of the tenancy, Resident agrees to pay the usual lock fee described by Lessor's then existing policies for each lock changed. If other devices named in this Paragraph are not returned to Lessor upon the termination of this Lease, Resident shall be liable for the replacement value of same.

B. Resident hereby acknowledges that Lessor may install new or different locks at the Premises upon being requested to do so by any Resident. In the event Lessor installs replacements locks at the request of a Resident, Lessor may charge and Resident shall pay that amount provided for by Lessor's then existing policies.

C. In the event replacement locks are installed by Lessor, each Resident understands and agrees that Lessor shall provide keys for the replacement locks for the Premises to any Resident who may request them, with the exception of persons known by Lessor to be perpetrators of sexual assault, stalking, or domestic violence who have been ordered to remain away from the Premises by a court of law, as provided in Paragraph 7(D) below.

D. Procedures for Changing of Locks for Victims of Domestic Violence, Sexual Assault, or Stalking. A person who has been ordered to stay away from the Premises or is otherwise excluded from entry into same pursuant to a domestic violence restraining order or any other similar order barring the person's re-entry onto the Premises shall, for the purposes of this Lease, be referred to as a **Perpetrator**.

(1) Where the Perpetrator is a Resident or Authorized Occupant: In the event a Resident claims to be the victim of domestic violence, sexual assault, or stalking, and the Resident wishes to change locks to bar the Perpetrator or any other person having key access to the Premises from re-entering the Premises under the terms of this Paragraph, the Resident must first provide Lessor with a copy of a relevant Court Order. Upon Lessor's receipt of (a) the Resident's request to change locks (which may be oral or written) and (b) a copy of the relevant Order, Lessor shall either change the locks within seventy-two (72) hours or grant permission to the Resident to change his/her their own locks. In the event Lessor fails to change the locks within seventy-two (72) hours of receiving Resident's request and a copy of the Order, the parties agree that Lessor's failure to act within such time shall serve as Lessor's consent to Resident changing the locks pursuant to N.C.G.S. § 42-42.3. In the event Resident changes his/her/their own locks, Resident shall provide Lessor with a working key to the replacement lock(s) within forty-eight (48) hours of the replacement installation. Pursuant to the terms of this Paragraph and the pertinent provisions of N.C.G.S. § 42-42.3, Resident understands and acknowledges that Lessor shall not provide keys for replacement locks or otherwise grant access to the Premises to a known Perpetrator, whether or not the Perpetrator may be a Resident, an Authorized Occupant, or any other person. In such an event, Resident understands and acknowledges that Lessor is not liable for civil damages to the Perpetrator excluded from the dwelling unit, including, but not limited to, any claims related to the Perpetrator's loss of use of the Premises or loss of use or damage to the Perpetrator's personal property.

(2) Where the Perpetrator is not a Resident or Authorized Occupant: In the event the Resident requesting a change of locks claims to be the victim of domestic violence, sexual assault, or stalking, Lessor shall either change the locks within forty-eight (48) hours of the request or allow the Resident to change his/her/their own locks. Should Lessor fail to change the locks within forty-eight (48) hours after receipt of Resident's request, the parties agree that Lessor's failure to act within such time shall serve as Lessor's consent that Resident may change the locks himself/herself/themselves pursuant to N.C.G.S. § 42-42.3. In the event Resident changes the locks, Resident agrees to provide Lessor with a working key to the replacement locks within forty-eight (48) hours of installation.

E. With the exception of the procedures described in Paragraph 7(D), Resident agrees that, upon request of any person listed as an Authorized Occupant and designated as an Authorized Occupant with Key Access in Paragraph 1(A) of this Lease, Lessor may open the Premises to any such Authorized Occupant (whether or not said Authorized Occupant is a minor). This authorization imposes no duty upon Lessor to open the Premises and Resident waives any claim for damages resulting from Lessor opening the Premises for such Authorized Occupants.

### 8. USE OF PREMISES

Resident agrees to use the Premises for residential purposes only and agrees not to use the Premises in any manner which Lessor deems injurious to the reputation, safety or welfare of Lessor, the property, or any person. However, where allowed by law and/or by Lessor in Lessor's sole discretion, Resident may use the Premises as a home office provided that such home office use (a) is ancillary to the residential use, (b) does not generate any additional pedestrian or vehicular traffic to or from the Premises or common areas, and (c) does not cause any disturbance to other residents or occupants of the community in which the Premises is located.

### 9. ASSIGNMENT, SUBLETTING AND TRANSFER OF INTEREST

Resident may not assign or sublet this Lease or the Premises without the prior written permission of Lessor. It is hereby understood and agreed that any consent by Lessor to any assignment or subletting of the Premises shall not be construed as consent to any future assignment or subletting, nor would such consent release Resident from liability under this Lease. Resident understands and agrees that Lessor may sell or transfer the Premises and transfer this Lease to any new owner. In the event that the Premises is sold or transferred, Lessor would be released from all obligations under this Lease and Resident's sole remedy would be against Lessor's successor in rights.

## 10. REPAIRS AND MAINTENANCE

In accordance with N.C.G.S. §§ 42-41, 42-42 and the provisions of this Lease, Lessor agrees to maintain the Premises in a fit and habitable condition. Resident acknowledges that necessary repairs and maintenance may be needed during Resident's tenancy. Resident further acknowledges that Lessor shall have a reasonable amount of time to make any such necessary repairs and/or perform any necessary maintenance and that Resident shall not be entitled to any abatement for any inconvenience or annoyance during that reasonable time. Resident further understands that rent may not be withheld under any circumstance, regardless of any alleged failure by Lessor to make repairs or perform maintenance within a reasonable time.

A. Lessor Agrees To:
   (1) maintain the common areas in a clean and safe condition;
   (2) maintain all equipment and appliances in a proper, safe working order;
   (3) make necessary repairs with reasonable promptness upon receiving written notice from Resident;
   (4) provide extermination as necessary, subject to the provisions contained in Paragraph 10(C) below; AND
   (5) provide operable smoke detectors and repair or replace the smoke detectors when notified in writing by the Resident that repairs or replacement is needed.

B. Resident Agrees To:
   (1) keep the Premises in a clean and sanitary condition;
   (2) comply with all laws, health and policy requirements, with respect to the Premises, including, but not limited to, N.C.G.S. § 42-43;
   (3) cooperate with Lessor and Lessor's agents in the performance of Lessor's duties as set forth in Paragraph 10(A) above;
   (4) perform those additional duties set forth in Paragraph 11 below;
   (5) use all appliances, fixtures, electrical, plumbing, sanitary, heating, ventilation, air conditioning, and other systems or equipment in a safe manner and only for the purposes for which they are intended;
   (6) give Lessor prompt written notice of any unsafe or unsanitary condition or defects in the appliances, fixtures, electrical, plumbing, sanitary, heating, ventilation, air conditioning, and other systems equipment or any other part of the Premises or common areas, except in the event of an emergency, when Resident is to give notice by the quickest means available;
   (7) refrain from littering the grounds or common areas and to keep the sidewalks, entrances, porches, floors, exterior patios, balconies, and front and back yards free from trash, clutter, personal articles or any items that are unsightly, offensive or inappropriate;
   (8) not destroy, deface, damage or remove any part of the Premises or common areas;
   (9) remove garbage and other waste from the Premises in a clean, appropriate and safe manner;
   (10) supply all electric light bulbs during Resident's occupancy;
   (11) periodically inspect the smoke detectors to ensure their proper operation and notify Lessor in writing of any needed repairs;
   (12) test and replace batteries in any battery-operated smoke detectors at the beginning of the tenancy, during the tenancy, and during any renewal thereof;
   AND
   (13) do nothing to disable the smoke detectors.

C. If Lessor determines, in Lessor's sole discretion, that Resident's failure to maintain the Premises in a clean and safe condition or to cooperate with Lessor in the performance of Lessor's duties as set forth in Paragraph 10(A) above results in damage, additional maintenance measures or treatments, including but not limited to additional extermination treatments, then Resident shall be liable for the cost and expense of said damage or additional maintenance measures or treatments. Specifically, in the event of the presence of any insect/pest infestation, Resident shall use all reasonable means necessary to cooperate with Lessor in the containment and eradication of the infestation.

## 11. MOLD AND MILDEW

Resident acknowledges and agrees that, for both the maintenance of the Premises and the health and well-being of Resident and Resident's occupants, family, and guests, Resident shall provide appropriate climate control and take other reasonable measures to prevent mold and mildew from accumulating in the Premises. Additionally, Resident agrees to:
   (1) clean and dust the Premises on a regular basis and remove visible moisture accumulation on windows, walls, and other surfaces as soon as such accumulation becomes reasonably apparent;
   (2) immediately notify Lessor of any evidence of a water leak or excessive moisture or standing water inside the Premises;
   (3) immediately notify Lessor of the presence of mold, mildew, or similar growth in the Premises that persists after Resident has attempted to remove it through the application of common household cleaning solutions or anti-microbial products;
   (4) immediately notify Lessor of any malfunction of any part of the heating, ventilation, air conditioning, plumbing, or laundry systems present on the Premises; AND
   (5) immediately notify Lessor of any inoperable doors or windows in the Premises.

Resident agrees that Resident shall be solely responsible for damages caused to the Premises and to personal property present on the Premises as well as any injuries or adverse medical condition suffered by Resident or Resident's occupants, family, guests or any other person resulting from Resident's failure to comply with the terms of this Paragraph. Further, Resident agrees that Lessor may, in Lessor's sole discretion, relocate Resident to an equal or better unit whenever there is an environmental concern, including but not limited to mold or mildew. Such relocation shall in no way terminate this Lease, but shall automatically amend this Lease as to the Address of the Premises as set forth in Paragraph 1(B) of this Lease. In the event Lessor determines that such relocation is due to Resident's failure to comply with the terms of this Paragraph, then the cost of such relocation shall be at the Resident's expense.

## 12. DAMAGES

Resident agrees to hold Lessor harmless and to indemnify Lessor from all fines, penalties and costs for violations or noncompliance by Resident with any laws, requirements or regulations and from any liability arising out of such violations or noncompliance. Whenever damage is caused by or attributable to the intentional or negligent acts and/or omissions of Resident, Authorized Occupants, guests, and/or visitors, Resident agrees to pay:
   A. The cost of all repairs and to do so within thirty (30) days after receipt of Lessor's demand for the repair charges; and
   B. Rent for the period the Premises are damaged, whether or not the Premises are habitable.

Furthermore, Lessor reserves the right to terminate the Lease in the event Resident is responsible for damage to the property as a result of Lessee's intentional or negligent acts and/or omissions. Lessee acknowledges that Lessor shall have no obligation to re-let another premises to Lessee in the event Lessee's intentional or negligent acts and/or omissions result in damage to the property nor shall Lessor have any responsibility to re-let another premises to Lessee in the event Lessee's unit is damaged or destroyed by flood, fire or other natural disaster.

Page 5 of 11

State of North Carolina Lease    Resident Initials: A. R.M  Date: 05/04/17   Lessor Initials: ___ Date: 05/04/17
L.C.B

Gov. Ex. 200-005

## 13. ALTERATIONS AND MODIFICATIONS

Resident agrees not to do any of the following without first obtaining Lessor's <u>written</u> permission:
A. Change or remove any part of the appliances, fixtures or equipment in the Premises;
B. Paint or install paneling, wallpaper or contact paper in the Premises;
C. Attach awnings or window guards to the Premises;
D. Attach or place any fixtures, signs or clotheslines on or in the building(s), common areas or the property grounds;
E. Attach any shelves, dividers, screen doors or make any other temporary or permanent improvements to the Premises;
F. Place or attach any aerials, antennas, satellite dishes, or other electrical connections on the Premises but, in the case of the installation of a satellite dish Lessor shall not unreasonably withhold written permission, so long as:
  (1) The satellite dish remains inside the Premises (i.e., the satellite dish and/or its mounting equipment does not protrude over the edge of a patio, deck, window or balcony)
  (2) The satellite dish and/or its equipment are not placed in any Common Area;
  (3) The satellite dish is mounted and secured without damaging the Premises in any way (damage to include the use of drilling, bolting, or screwing support structures into <u>any</u> portion of the Premises);
  (4) No cables or wires of any kind may be installed into or through any wall of the Premises;
  (5) In consideration for allowing the installation and use of a satellite dish on the Premises in accordance with the terms and conditions hereinabove described, Resident accepts any and all risks inherent in the installation or maintenance of such satellite dish and Resident also indemnifies and holds Lessor harmless for any damage or injury to any person or chattel caused by the use or installation of the satellite dish on the Premises; AND
  (6) At the sole discretion of Lessor, Resident agrees to provide Lessor, at Lessor's request, evidence of an existing renter's insurance policy or other liability insurance policy which provides coverage in an amount not less than $25,000.00 in the event of injury to any other person or person's chattel arising from the use or installation or presence of a satellite dish on the Premises.

<u>Resident agrees that any improvement or alteration made shall become a part of the Premises and the property unless otherwise agreed to by Lessor and Resident agrees that any improvement or alteration authorized by the Lessor must be undertaken only in a workmanlike manner and no lien may attach to the Premises.</u>

## 14. GENERAL RESTRICTIONS & OBLIGATIONS OF RESIDENT

A. <u>Resident</u> Agrees **Not** To:
  (1) Permit any person other than those listed in Paragraph 1(A) to reside in the Premises. A person shall be presumed to "reside" in the Premises if they are an overnight guest for ten (10) consecutive days or for any fourteen (14) days during any sixty (60) day period. Residency in the Premises may also be established by the totality of the circumstances;
  (2) Use the Premises for any purpose deemed hazardous by insurance companies carrying insurance thereon;
  (3) Disable or render the smoke detectors inoperable for any reason at any time;
  (4) Make or permit noises or acts that will disturb the rights or comfort of others;
  (5) Engage in threatening, intimidating or violent behavior or conduct intended to harass, annoy or harm others;
  (6) Discharge, display, or in any way use in, on, or around the Premises or common areas any firearm or weapon of any type, including but not limited to air rifles and pistols, knives (other than ones being used for cooking or food consumption), swords, etc.;
  (7) Use a portable grill within a minimum of twenty five (25) feet of the Premises or of any combustible material not being used for grilling, unless otherwise indicated;
  (8) Use the exterior patio, balcony, and/or entrance area for storage; AND
  (9) Introduce or use any fossil-fuel burning heating unit or generator in the Premises.
B. <u>Resident</u> Agrees To:
  (1) Observe and comply with any rules and regulations which now exist or which may be later established by Lessor for the operation of the Premises;
  (2) Allow Lessor to immediately dispose of any property left by Resident when he/she surrenders or abandons the Premises;
  (3) Allow Lessor or any law enforcement officer to remove or have removed from the common areas any person who cannot or will not establish that he/she is a Resident or invited guest of a specific Resident; AND
  (4) Abide by the terms, restrictions, covenants, and rules and regulations that may be promulgated from time to time under the authority of any recorded instrument affecting the Premises, including but not limited to homeowners' association covenants. Resident agrees that any such recorded documents affecting the Premises are incorporated herein by reference as if set out fully therein.

## 15. RIGHT OF ENTRY

Lessor reserves the right to enter the Premises, with or without notice, during reasonable times for inspections, maintenance, extermination, alterations, or improvements deemed necessary or desirable in Lessor's sole discretion, or to show the Premises to prospective residents during the last thirty (30) days of the rental term. Lessor also reserves the right to enter the Premises, with or without notice to Resident, at any time deemed necessary in Lessor's sole discretion to protect life, ensure safety or prevent damage to the Premises including, by way of example, but not limited to, turning on utilities at Resident's expense during periods of cold weather to protect against the possibility of frozen pipes.

## 16. COMMON AREAS AND AMENITIES

Resident understands and agrees that the use of the common areas and amenities (including any swimming pool, parking areas, laundry facilities, or roadways) is subject to any Rules and Regulations established by Lessor and that any such Rules and Regulations may be changed at any time without notice to Resident. In the event Resident violates any Rules and Regulations established by Lessor or otherwise misuses said common areas or amenities as determined by Lessor in Lessor's sole discretion, then Lessor shall have the right to prohibit Resident from any common area or from the use of any amenity and Resident's continued use would be considered trespassing. Resident further agrees that Lessor may close or prohibit access to any common areas or eliminate any amenity at any time and that such elimination, closing or prohibition does not entitle Resident to any reduction or abatement in rent.

## 17. AUTOMOBILES & PARKING

A. Parking has been designated for cars, motorcycles and light trucks. All other vehicles, including boats, trailers, and RV's will not be allowed in the common areas unless prior written permission is obtained from Lessor.
B. Lessor reserves the right to control parking in any manner it deems necessary.
C. Vehicles shall be parked so as not to obstruct driveways, sidewalks or spaces for other vehicles.
D. Car washing is not allowed except in areas designated for such by Lessor.
E. All vehicles must be kept in proper operating condition so as not to be a hazard or a nuisance by reason of noise, emissions, appearance or otherwise. Except for minor adjustments, no repairs or maintenance shall be conducted on the property or common areas. Drainage of any automotive fluids is strictly prohibited.
F. Any vehicle parked on the Premises or property that is unlicensed, inoperable, abandoned, or lacking any required permit may be towed away and stored at its owner's expense without Lessor incurring any liability to anyone for any reason.
G. Resident agrees that Lessor may tow, without notice or demand, any vehicle in violation of any provision of this Paragraph 17. Should Lessor tow any vehicle as a result of a breach of any portion of this Paragraph 17, Resident agrees to hold Lessor harmless from any liability that arises from the towing away of any such vehicle owned, possessed, or maintained by Resident, members of Resident's household, or any of Resident's guests.

## 18. DRUG AND CRIME-FREE HOUSING

A. Resident and Resident's guests or visitors shall not engage in or facilitate criminal activity of any kind on or near property owned or operated by Lessor nor shall Resident engage in any kind of criminal activity whatsoever.
B. Resident shall not invite (or allow access to the Premises) any person previously removed or barred from the property or other properties of Lessor, nor shall Resident invite or allow, whether directly or indirectly, onto the property or Premises any person about whom Resident has received a written notice of objection from Lessor.
C. Resident shall immediately notify law enforcement or Lessor upon learning that a person previously removed or barred from the property or other properties of Lessor has returned to or re-entered the property.
D. Proof of a violation of this paragraph shall be by a preponderance of the evidence.
E. The fact that a criminal prosecution involving criminal activity in violation of this Lease has not commenced or concluded or has concluded or terminated without a conviction or adjudication of delinquency shall not preclude the termination of this Lease or the commencement of any civil action by Lessor.
F. Where a criminal prosecution involving criminal activity in violation of this Lease results in a final criminal conviction or adjudication of delinquency, such adjudication or conviction shall be considered in any civil action brought by Lessor as conclusive proof that criminal activity occurred in any civil action brought by Lessor.
G. If Lessor has knowledge that Resident has committed illegal acts that violate this Lease, Lessor may still accept rent due and owing from Resident without such collection constituting a waiver of the default(s).
H. For purposes of this Paragraph, any crime involving domestic violence, sexual assault, stalking, or related offenses shall constitute a violation of this Lease, and, if any domestic violence restraining order or similar governmental order is issued by a Court of law as a result of such an act or acts, Resident understands and agrees that Lessor shall not provide keys to the Perpetrator for replacement locks for the Premises pursuant to the terms of Paragraph 7(D).

## 19. INSURANCE, RELEASE & INDEMNITY

Resident agrees that he/she/they should secure insurance to protect all personal property against loss resulting from theft, fire, storm and other hazards and casualties.

A. Resident understands and agrees that Lessor and its agents are not liable for any damage to, destruction of or loss of any personal property located or stored in the Premises regardless of the cause of such damage.
B. Resident agrees to indemnify, defend and hold harmless Lessor and its agents from and against all claims, liabilities and any other costs (including attorney's fees and court costs) arising out of:
    (1) any harm to person or property resulting from the negligent or intentional acts or omissions of Resident or guests;
    (2) any injury resulting from any breach of this Lease by Resident;
    (3) Resident's failure to comply with any requirements imposed by any governmental authority;
    (4) any judgment, lien or other encumbrance filed against Lessor or the Premises as a result of Resident's actions;
    (5) the towing of any vehicles belonging to Resident or guests pursuant to Paragraph 17(F) of this Lease or any state or local law or ordinance; AND
    (6) any damages, expenses, and costs, including attorney's fees, arising out of or in any way relating to injury to persons or property caused, whether directly or indirectly, by any animals owned or otherwise kept by Resident, occupants, or guests.
C. Resident agrees that in consideration for using any common areas and amenities, Resident and his/her/their guests shall assume all risks associated with the use thereof and shall hold Lessor and its agents harmless and indemnify the same for any injury arising out of the use thereof.

## 20. SECURITY

Resident understands and agrees that Resident and occupants are exclusively responsible for protecting themselves, the Premises and guests from crime, fire and any other danger even if security systems and/or personnel are present at the Premises. Resident acknowledges that no warranties, guaranties or representations regarding the security of the Premises or common areas have been made by Lessor, its agents and employees and the presence of security systems and/or personnel shall not be construed as such. Lessor reserves the right to alter or terminate any security system and/or personnel at any time without notice to Resident. Resident releases Lessor and its agents and employees from any and all liability for the criminal or intentional acts of others.

State of North Carolina Lease

Page 7 of 11
Resident Initials: A.R.M Date: 05/04/17  Lessor Initials: _____ Date: 05/04
L C B

*Gov. Ex. 200-007*

### 21. FIRE OR OTHER CASUALTY

Resident shall immediately notify Lessor of any damage to the Premises by fire, flooding, or other casualty, including natural disasters, other catastrophic damage, or the presence of a bed bug infestation, highly elevated levels of radon gas, or the presence of a methamphetamine laboratory and/or toxic chemicals used in or otherwise related to the production of methamphetamine. Lessor may, at its sole discretion, elect to repair the damage within a reasonable time under the circumstances such that Resident's obligations under this Lease shall continue. In the alternative, Lessor may, at its sole discretion, elect not to repair the Premises, and in such an event, this Lease shall terminate as of the date of the damage. Resident shall always be liable for and shall indemnify, defend, and hold Lessor harmless for any damages caused by or attributable to Resident, Authorized Occupants, or Resident's guests or agents. In the event of damage caused by Resident, Authorized Occupants, and/or Resident's guests or agents, Lessor may declare a default of this Lease and terminate Resident's right of possession without terminating the Lease, pursuant to Paragraph 29, in which case Resident's obligations under the Lease shall continue with full force and effect. Lessor shall have no duty to provide alternative housing, pay any of Resident's moving or relocation expenses, or pay for any damage to Resident's personal property in the event of fire, flooding, or other casualty, including natural disasters, other catastrophic damage, or the presence of a bed bug infestation, highly elevated levels of radon gas, or the presence of a methamphetamine laboratory and/or toxic chemicals used in or otherwise related to the production of methamphetamine.

### 22. NOTICES

**All notices required by this Lease shall be in writing**. Resident specifically acknowledges that _oral_ notices, regardless of form, content or implication, shall never constitute the term "notice" as described in this Lease nor suffice as any such "notice" required by this Lease. Resident further acknowledges that notices shall not be written onto any other instrument such as a check or money order but shall be delivered to Lessor on a separate piece of paper that is of appropriate size and appearance.
A. _Notice to Resident._ Notices shall be delivered to the Resident by:
(1) posting the notice on the front door of the Premises; or
(2) hand delivery to Resident or any Authorized Occupant over fifteen (15) years of age; or
(3) U. S. Mail, first class postage; or
(4) via a designated delivery service authorized pursuant to 26 U. S. C.§ 7502(f)(2) to the address listed in Paragraph 1(B) or other such address provided in writing by Lessee.
B. _Notice to Lessor._ Notices shall be delivered to the Lessor by:
(1) hand delivery to an employee of Lessor during regular business hours inside the management office at the community in which the Premises is located, or by delivery to a "drop box", if available, pursuant to Paragraph 22(C); or
(2) U. S. Mail, first class postage; or
(3) via a designated delivery service authorized pursuant to 26 U. S. C. § 7502(f)(2) to the address listed in Paragraph 1(A) or other such address provided in writing by Lessor.
C. _Use of Overnight or "Drop" Boxes._ For the purposes of this Lease, including the purpose of assessing late fees pursuant to Paragraph 1(C), Resident agrees that any notice or payment delivered by Resident to an after-hours "drop box" located on the exterior of Lessor's management office shall be deemed received _at the time the management office re-opens for business_, not before. **By using the "drop box", Resident agrees that delivery of a notice or payment after business hours on the date a notice or payment is due may result in the notice or payment being considered late**.

### 23. DELIVERY OF POSSESSION

If Lessor is unable to deliver possession of the Premises at the commencement hereof, Lessor shall not be liable for any damages caused thereby nor shall this Lease be void or voidable. However, Resident may terminate this Lease if possession is not delivered within three (3) days of the commencement of the term hereof.

### 24. CONDITION OF DWELLING PREMISES

By signing this Lease, Resident acknowledges that the Premises are safe, clean, and in good condition. Resident agrees that all appliances and equipment in the Premises are in good working order. Any adverse conditions, problems or possible exceptions to the preceding two sentences are described on the Apartment Condition Checklist. Should Resident discover any adverse conditions, problems or exceptions that are not listed on the Apartment Condition Checklist, including the presence of any insect/pest infestation, Resident must provide written notice of the same to Lessor within five (5) calendar days of Resident first taking possession of the Premises. If Resident does not provide written notice to Lessor within this five (5) calendar day notice period, Lessor shall hold Resident responsible for said adverse condition, problem or exception. Lessee shall not be entitled to a reduction of the monthly rent or cancellation of this lease because of a temporary failure of utilities, heat, air conditioning or temporary closing of swimming pool.

### 25. RADON GAS DISCLOSURE

Radon gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in North Carolina. Additional information regarding radon and radon testing may be obtained from your county public health unit.

### 26. LEAD PAINT DISCLOSURE

Housing built prior to 1978 may contain lead-based paint. Lead from paint, paint chips and/or dust can pose health hazards if not properly managed. Lead exposure can be especially harmful to young children and pregnant women. Before renting a dwelling constructed prior to 1978, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Furthermore, Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

### 27. RENTAL APPLICATION

Resident understands that Lessor has relied upon the Rental Application submitted by Resident as an inducement for entering into this Lease and Resident, therefore, warrants that the facts contained in such application are true. If any facts are determined to be false, it shall constitute a default of this Lease pursuant to Paragraph 29 and, in such an event, Lessor shall have all of the rights and remedies set forth in this Lease, including but not limited to Lessor's ability to terminate Resident's tenancy immediately and seek possession of the Premises and collect from Resident any damages incurred, including reasonable attorney's fees.

Page 8 of 11

State of North Carolina Lease    Resident Initials: A R M   Date: 05/04/17   Lessor Initials: _____  Date: 05/04/17
                                 L C B

_Gov. Ex. 200-008_

### 28. SUB-METERING UTILITY DISCLOSURE

The contents of this Paragraph shall be considered valid terms and conditions of this Lease ONLY in the event that Paragraph 1 denotes that Lessor is sub-metering water and/or sewer services to Resident. If the appropriate box in Paragraph 1 is checked or otherwise marked "YES", then this Paragraph shall control as this Lease relates to the sub-metering of water and/or sewer services on the Premises. Resident agrees that Resident is solely responsible for paying all charges incurred by Resident for the use of water and/or sewer services (hereinafter referred to a "utilities") that are sub-metered for the Premises and billed and/or provided to Resident by the Provider listed in Paragraph 1 of this Agreement. <u>Such charges for utilities shall be in addition to Resident's total monthly rent amount, and the charges shall not exceed the total of 1) the unit consumption rate charged by the supplier of the service, plus 2) a monthly administrative fee, said amount representing the cost of billing and collection, said cost not to exceed the maximum administrative fee authorized by the N.C. Utilities Commission.</u> Resident shall receive bills for use of the utilities at least once per monthly period. Each bill shall list a billing date, and the payment of such bill by Resident shall be considered past due if not received within twenty-five (25) days of the billing date. Resident agrees to allow Lessor or agents of Provider access to the Premises during regular business hours if necessary to read the sub-meter for the Premises. In the event that Resident fails to pay for the utilities when due, Resident understands that any and all unpaid amounts related to the utilities may be deducted from Resident's security deposit pursuant to Paragraph 5 and N.C.G.S. § 42-51 and Lessor may initiate a civil action against Resident for the collection of such unpaid amounts. In consideration of the receipt of such utilities, Resident releases Lessor and Provider from any and all liability arising from the use or enjoyment of the utilities or from any interruption or variations in the utilities, unless such injury or damage is the result of the gross negligence of Lessor and/or Provider.

### 29. DEFAULT

In the event that Resident fails to comply with any of the terms and conditions contained herein or referenced hereto, or fails to perform any other promise, duty or obligation herein agreed to or imposed by law, such failure shall constitute a default under this Lease. Upon any default by Resident, Lessor shall be entitled to collect from Resident all expenses, damages, and costs (including attorney's fees and court costs) arising out of or in any way relating to said default. <u>Should Resident desire to terminate their tenancy at the Premises at any time prior to the ending date of the lease term stated in Paragraph 1(B), Resident specifically understands and agrees that, in addition to any other remedies available to Lessor under this Lease, Resident shall be liable to Lessor for the Total Monthly Rent that accrues through (i) the date the Premises are re-rented to another tenant OR (ii) the end of the lease term, whichever event occurs first.</u> In addition to the foregoing, and in the event of a default by Resident:
  <u>A</u>. Lessor may, <u>with or without notice</u> to Resident:
    (1) terminate this Lease; or
    (2) terminate Resident's right to possession of the Premises without terminating this Lease;
  <u>B</u>. Lessor shall be entitled to immediate possession of the Premises and Resident shall peacefully surrender the Premises to Lessor upon its demand;
  <u>C</u>. Should Resident fail to surrender possession of the Premises, Lessor shall re-enter and retake possession through a summary ejectment proceeding or expedited eviction proceeding pursuant to Chapter 42 of the North Carolina General Statutes;
  <u>D</u>. In the event that Lessor terminates this Lease, all its duties under this Lease shall terminate and it shall be entitled to collect from Resident all accrued and unpaid rents and damages arising under this Lease;
  <u>E</u>. In the event that Lessor terminates Resident's right to possession without terminating the Lease, Resident shall remain liable for the full performance of all terms and conditions under this Lease - including, but not limited to the payment of rent - and Lessor shall use reasonable efforts to re-let the Premises on Resident's behalf and Resident shall remain liable for any resulting costs, deficiencies or damages;
  <u>F</u>. In the event Lessor files a summary ejectment action against Resident (as described in Paragraph 29(C)), Resident shall be liable to Lessor for a fee described: a.) Complaint-Filing Fee - 5% of the monthly rent, b.) Court-Appearance Fee - 10% of monthly rent, c.) Second Trial Fee - 12% of monthly rent. This amount shall be in addition to court costs, attorney's fees, and any other monetary damages or costs arising under the terms of this Lease; and
  <u>G</u>. In the event that any default of this Lease by Resident results in Resident owing a debt to Lessor, the debt shall accrue interest at the annual rate described in Paragraph 1(E), beginning from the date Lessor obtains possession of the Premises until the debt is paid in full. Furthermore, Lessor shall seek collection through any and all available remedies.

### 30. RESIDENT'S DUTIES UPON TERMINATION

Upon any termination of the tenancy, whether for breach or otherwise, Resident shall, in addition to any other obligations required by this Lease or applicable law:
  <u>A</u>. Pay all utility bills due for services to the Premises for which Resident is responsible;
  <u>B</u>. Vacate the Premises and remove <u>all</u> personal property;
  <u>C</u>. Properly clean the Premises, including plumbing fixtures, refrigerators, stove and sinks, and remove all trash and clutter;
  <u>D</u>. Make any repairs necessary to return the Premises to the same condition it was at the beginning of the tenancy, less ordinary wear and tear;
  <u>E</u>. Secure and lock all doors and windows;
  <u>F</u>. Return to Lessor all keys, security access cards and devices, parking gate openers, and garage door openers (as applicable to the Premises);
  <u>G</u>. Agree to not disclose to any third party any information regarding any security code obtained as a Resident of Lessor; AND
  <u>H</u>. Provide Lessor with a forwarding address to which the Security Deposit may be returned, if so entitled.

### 31. SEVERABILITY

In the event any provision of this Lease is deemed by any Court of competent jurisdiction to be unenforceable, void, invalid or otherwise not binding for any reason, the offending provision shall be severed and all other provisions of this Lease shall remain in full force and effect.

### 32. SUBORDINATION

Resident understands and agrees that Resident's interests in the Premises under this Lease are and shall remain subject to and subordinate to any liens, deeds of trust, security agreements, or other such liens or security interests in the Premises and property. This subordination provision shall be self-operative.

### 33. EMINENT DOMAIN

If the Premises or any part thereof shall be taken by eminent domain pursuant to governmental authority, this Lease shall terminate at the option of Lessor and Resident shall have no claim against the Lessor or any award granted to the Lessor as compensation for the taking.

### 34. NON-WAIVER

Failure of Lessor to insist upon the strict performance of the terms, covenants, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of Lessor's rights thereafter to enforce any such terms, covenants, agreements, or conditions, but the same shall continue in full force and effect. Lessor's acceptance of any monthly rental payment after the due date shall not constitute a waiver of its right to receive future rent payments on the due date nor shall any acceptance of a partial payment of rent be deemed or considered a waiver of Lessor's right to the full amount thereof.

### 35. REMEDIES

All remedies under this Lease or allowed by law or equity shall be cumulative. If a suit for any breach of this Lease establishes a breach by Resident or if Resident brings an unsuccessful action against Lessor, Resident shall pay to Lessor all costs associated with such action, including court costs and attorney's fees.

### 36. INTERPRETATION

This Lease shall be governed by the law of the State where the unit is located.

### 37. DISCLOSURE OF RESIDENT INFORMATION

Resident understands and agrees that Lessor shall possess and maintain personal, nonpublic information obtained from Resident's rental application, credit reports, rental references, as well as information otherwise obtained during the normal course of Resident's business relationship with Lessor. **RESIDENT HEREBY AUTHORIZES LESSOR TO DISCLOSE ANY AND ALL SUCH INFORMATION TO THIRD PARTIES AT THE REQUEST OF LAW ENFORCEMENT, GOVERNMENTAL AGENCIES OR BUSINESS ENTITIES ENGAGED IN BUSINESS TRANSACTIONS WITH RESIDENT, INCLUDING, BUT NOT LIMITED TO, FINANCIAL INSTITUTIONS OR OTHER BUSINESSES PERFORMING NECESSARY INQUIRIES AT THE CONSENT OR KNOWLEDGE OF RESIDENT.**

### 38. EXECUTION OF AGREEMENT

**IN WITNESS HEREOF,** this Residential Lease Agreement is duly executed by the Lessee(s) and the Lessor, on the dates written below. By executing this Lease, **RESIDENT ACKNOWLEDGES HAVING READ AND AGREED TO ALL THE PROVISIONS OF THIS AGREEMENT** and having received a copy of this Lease. Resident further acknowledges consulting with, or having had the opportunity to consult with counsel prior to executing this Lease. This Lease, along with all addenda and other agreements and documents incorporated herein by reference, constitute the entire agreement between the parties and no statement, oral or written, not contained herein shall be binding on either party. No subsequent amendment to this Lease or any statement, oral or otherwise, by either party to this Lease shall be binding unless it is in writing and signed by all parties hereto, with the sole exception of the modification of any Rules and Regulations implemented by Lessor.

State of North Carolina Lease — Page 10 of 11 — Resident Initials: A R M / L C B  Date: 05/04/17  Lessor Initials: ELU  Date: 05-04-17

Gov. Ex. 200-010

## ADDENDUMS

Please read and sign all of the addendums listed below which are also part of this lease agreement.

Addendum 1: Grease Addendum

Addendum 2: SOUTHWOOD REALTY COMMUNITY POLICIES

Addendum 3: INSURANCE NOTICE AND AGREEMENT

Addendum 4: SOUTHWOOD REALTY PET ADDENDUM

Addendum 5: SWIMMING POOL RULES

Addendum 6: LEASE ADDENDUM FOR SATELLITE DISH

Addendum 7: OUTDOOR GRILLING

Addendum 8: SMOKE DETECTOR ADDENDUM

Addendum 9: CARBON MONOXIDE

LESSEE: [signature only - do not print - Include first, middle and last names]

Lessee Signature: Abel Romero Melendez      Date: 05-04-17

Lessee Signature: Lizbeth Castellanos        Date: 05-04-17

Lessee Signature:                             Date:

Lessee Signature:                             Date:

Lessor: Southwood Realty Co. dba Misty Woods

(Printed Name of Lessor)

By: Southwood Realty Co.

(Printed Name of Management Company (if any) acting as agent for Lessor

Signature of Authorized Person [signature]

Signature of Authorized Person Signing for Management Company or Lessor

Date Signed: 05/04/17

Page 11 of 11

*Gov. Ex. 200-011*

[Print Form]

## SOUTHWOOD REALTY COMPANY
## RESIDENTIAL LEASE AGREEMENT

Revised: 08/14

This Residential Lease Agreement (hereinafter referred to as "Lease") is made and entered into this **7** day of **MARCH**, **2016** by and between the Lessor and Lessee(s) identified below.

### 1(A) IDENTIFICATION OF PARTIES

Name of Lessor (Owner): **Southwood Realty Co. dba Misty Woods**     Address of Lessor: [REDACTED] Charlotte, [REDACTED]

All amounts paid by Resident to Lessor shall be made payable to (if different than Lessor): **MISTY WOODS APARTMENTS**

**Full Legal Name(s) of Lessee(s):**
1: ABEL ROMERO MELENDEZ
2: LIZBETH CASTELLANOS BAUTISTA
3:
4:

If this Residential Lease Agreement is executed by more than one Lessee, **each** Lessee shall be *jointly and severally* liable (i.e. each individual Lessee will be fully responsible) for adhering to all of the terms and conditions herein contained.

**AUTHORIZED OCCUPANTS**
(Check box for those with key access)

| Key Access | Name: | Age: |
| Key Access | Name: | Age: |
| Key Access | Name: | Age: |
| Key Access | Name: | Age: |

Throughout this Lease, "Resident" refers to all Lessee(s) listed above. Resident acknowledges that he/she/they shall be fully responsible for the actions of all Authorized Occupants. Furthermore, Resident understands and acknowledges that Resident shall be in default of this Lease (*see Paragraph 29 below*) in the event any Authorized Occupant breaches any of the conditions and terms of this Lease.

### 1(B) ADDRESS AND TERM

Leased Property Address (street, unit, city, state, zip code):
**1511-729 WILLOW PARK DRIVE CHARLOTTE, NC 28205.**

Lessor agrees to lease to Resident the property described above, hereinafter referred to as "Premises", in consideration of the agreements and promises contained in this Lease.

Lease Term Beginning Date: **03-07-2016**     Lease Term Ending Date: **06-12-2017**

### 1(C) RENT

**BASE MONTHLY RENT: $895.00**

Additional Monthly Rents (Describe form of rents below, if any):
Description: **TRASH (DMP)**     Amt: **$7.00**
Description:     Amt: **$0.00**

Monthly Pet Fee (if applicable):
Amount per Pet: **$20.00**  X  Number of Pets: **0**  =  Total Monthly Pet Fee: **$0.00**

Monthly Rent Subtotal: **$902.00**

**Monthly Concession/Discount?**
○ Yes   Description:    Amt: $0.00
● No    Description:    Amt: $0.00

One Time Concession Amount:

**TOTAL MONTHLY RENT: $902.00**
(Equal to Base Monthly Rent Plus Additional Monthly Rents (incl. Pet Fee) Minus Discounts, if any)

Late Fees Per Month: **$44.00**

(Equal to 5% of the Total Monthly Rent, if rent paid after 5th of month; if rent is subsidized by a government entity, Late Fees will be $15.00 or 5% of the Resident's share of the monthly rent, whichever is higher).

**Is this a renewal?**  ○ Yes  ● No     Prorated Rent for First Month of Lease Term: **$727.42**
[Equal to (Total Monthly Rent) / (30 days) x (days remaining in 1st month)]

Page 1 of 11

State of North Carolina Lease     Resident Initials: ARM  Date: 03/07/16  Lessor Initials: [signature]  Date: 3-7-16
LCB  03/07/16

Gov. Ex. 200-023

Finley Automotive LLC

███████

Charlotte, NC ███

704.763.6034

To whom it may concern,

Abel Romero is an employee if Finley Automotive llc. He is a auto technician and sale person for Finley Automotive llc. He is paid $750 per week. His start date was on 8/1/2015 until the present and is likely to continue his position here at Finley Automotive llc.

Finley Automotive LLC

John Finley Jr.   *[signature]*

704.376.3730

Owner

Gov. Ex. 200-060