UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA

              -against-                       17 Cr. 434 (ARR)

ABEL ROMERO-MELENDEZ,

                                  Defendant.

------------------------------------------------------------------------ x

**SUPPLEMENTAL MEMORANDUM OF LAW IN AID OF SENTENCING FOR DEFENDANT ABEL ROMERO-MELENDEZ**

MICHAEL O. HUESTON, ESQ.
*Attorney for Defendant Abel Romero-Melendez*
16 Court Street, 35th Floor
Brooklyn, New York 11241
(718) 246-2900

JACQUELINE CISTARO, ESQ.
*Attorney for Defendant Abel Romero-Melendez*

Dated:      Brooklyn, New York
                January 24, 2022

Defendant Abel Romero-Melendez places before the Court the following issues relating to his appropriate sentence.

**I.     Further Letters of Support**

Please find attached at Exhibit H further letters in support.

**II.    The Court Should Not Impose a Trial Penalty**

Mr. Romero-Melendez is an individual who now faces the possibility of an extraordinary and an irrational penalty being imposed on him by this Court because he chose to exercise his constitutional right to trial and lost.

This Court should reject the notion of imposing a "trial penalty."  *See United States v. Holloway*, No. 95-CR-78 (JG), 2014 U.S. Dist. LEXIS 102707, at *7 (E.D.N.Y. July 28, 2014) ("The difference between the sentencing outcome if a defendant accepts the government's offer of a plea bargain and the outcome if he insists on his right to trial by jury is sometimes referred to as the 'trial penalty.'").

In November 2019, Mr. Romero-Melendez was offered a plea by the government with an estimated offense level of 26, resulting in a range of imprisonment of 188 to 235 months.  *See* Exhibit I.  Now after trial, the government argues for a term of imprisonment of 420 months.  *See* Government's Sentencing Memorandum at 45.  So an offered range of 15.6 to 19.5 years has now become a request for 35 years.

While the defense recognizes that there is a consequence for losing at trial, we respectfully suggest this is the province of U.S.S.G. § 3E1.1(a) and (b) (acceptance of responsibility).  The government's erroneous, and indeed, overstated, view of Mr. Romero-Melendez's role in the offense would produce a sentence that would be absurd if only there was not a real person on the receiving end of it.  *Holloway*, at *6.  *See also*

*United States v. Adelson*, 441 F. Supp. 2d 506, 512 (S.D.N.Y. 2006) (district court commenting about "the utter travesty of justice that sometimes results from the guidelines' fetish with absolute arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense.").

The government wishes to turn Mr. Romero-Melendez's exercise of his constitutional right of a trial by jury into an instrument of brutality. *Compare United States v. Haynes*, 456 F. Supp. 3d 496, 518 (E.D.N.Y. 2020). The government's requested sentence of 35 years should be appropriately limited to the worst offenses by the worst offenders. *Id.* at 514. The Sentencing Commission's statistics show this. In 2019, the average federal sentence for sex abuse offenses was 205 months while the average federal sentence for murder was 255 months.[1] Mr. Romero-Melendez's alleged crimes are serious, but they are not comparable to taking a life. This is why the government offered Mr. Romero-Melendez a plea of 188 to 235 months.

The government's argument regarding Mr. Romero-Melendez's role in the offense fails to acknowledge that this Court does not have to simply accept the government's version of the trial record in determining his sentence. Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Defense counsel's calling out the provable lies and falsehoods of Diana[2] does not

---

[1] *See* United States Sentencing Commission, Table 15, "Sentence Imposed by Type of Crime," https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table15.pdf.

[2] In one instance in Defendant's August 6, 2021 Sentencing Memorandum, at 7, we mistakenly referred to "Daisy" allegedly being sexually assaulted and abused in Mr. Romero-Melendez's presence, when the name should have been "Diana."

2

translate to the need to punish Mr. Romero-Melendez more. Or put another way: Is it not the role of defense counsel to point out problems with a witness like Diana? Or should defense counsel simply let a fiction stand unchallenged?

On cross-examination, Diana admitted that Mr. Romero-Melendez did not arrive in New York until "**three months**" after she and Jose Miguel Melendez-Rojas arrived in Queens. Trial Transcript ("Tr.") 1324 (emphasis added); *see also* GX 3500-Diana-7 and 7A. She further admitted that she knew the woman, Carmen, went back to Veracruz, Mexico (which supports the inference that Mr. Romero-Melendez did not force women across the border). Tr. 1323; *compare* GX 3500-Diana-12 and 12A. The money sent by Castellanos Bautista and Cristina Sanchez Sanchez to their families also supports the inference that Mr. Romero-Melendez did not abuse or coerce women involved in prostitution. *See* GX 412 at Exhibit A and B; *see also* Tr. 1066.

Further, Mr. Romero-Melendez's actual arrival date shows that it was "physically impossible" for him to provide Diana with a cellphone, since he was in Mexico. *United States v. Griffin*, 194 F.3d 808, 817 (7th Cir. 1999). She even told the government in May 2017: "she had a phone that **belonged to MIGUEL** and that he would always go through her phone and check her messages. When she left MIGUEL she kept his phone." GX 3500-Diana-8 (emphasis added).

Diana testified that the "**first night**" she worked as a prostitute, that Miguel found money that she had hidden from that day's earnings and believed she had been stealing from him, so he proceeded to beat her and rape her in front of Mr. Romero-Melendez and others. Tr. 1261, 1262 (emphasis added). However, on cross-examination, she admitted that she never told the government that anyone was present during any alleged rape and

agreed it was an "extremely important detail" that she would have shared with the government. Tr. 1323-1328; *compare also* GX-3500 Diana-7 and 7A. Again, it was "physically impossible" for Mr. Romero-Melendez to be there since he was in Mexico.

Diana testified that Cristina Sanchez Sanchez was "very young" and that Mr. Romero-Melendez bragged that Sanchez was "14 or 15" years old. Tr. 1264, 1267. However, Sanchez was, at least 18 years old, when Diana claims she met her. *See e.g.,* GX 217 and GX 218. In addition, the wires at GX 412 showed that Sanchez was already in New York as early as February 2006, so Sanchez could not have arrived after Diana, yet another falsehood.

This critique of Diana is clearly part of the "explanation" the government claims we never supplied regarding our objections to the guideline calculations at Count One, because if you reject Diana's flawed testimony then the enhancements should not apply. And we respectfully submit that ensuring that Mr. Romero- Melendez is not sentenced based on a lie, is not a vice, but a virtue.

Dated: Brooklyn, New York
January 24, 2022

Respectfully submitted,
____s/_____
MICHAEL HUESTON, ESQ.
*Attorney for Defendant Abel Romero-Melendez*
16 Court Street, 35th Floor
Brooklyn, New York 11241
(718) 246-2900

JACQUELINE CISTARO, ESQ.
*Attorney for Defendant Abel Romero-Melendez*

4